UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>WILLIAM A. SIPPER, et al.,<br><br>　　Defendants. | Civil Action No.  11-cv-875 (JEB) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jane Doe, a new part-time employee of Defendant New Leaf Brands, Inc., traveled from New York with some co-workers to staff a trade show in Washington, D.C.  One night after dinner and drinks, she and the company's Chief Operating Officer, Defendant William Sipper, returned to his hotel room, ostensibly for him to book her travel to future shows.  After she fell asleep on one of his beds, she alleges that she awoke to find him raping her.  She then sued both Sipper and New Leaf in the present action.  Arguing that the company is not vicariously liable for Sipper's conduct, New Leaf now moves to dismiss.  As the Court agrees only in part with the company, it will deny the Motion as to one of Plaintiff's theories and permit the case to proceed on this basis against New Leaf.

**I.      Background**

According to Plaintiff's Complaint, which must be presumed true for purposes of this Motion, on September 17, 2010, she was offered a part-time position at New Leaf on an independent-contractor basis.  Compl., ¶ 10.  Until his resignation on December 31, 2010, Defendant William Sipper was the Chief Operating Officer of New Leaf.  Id., ¶¶ 6, 46.  On November 13-14, 2010, New Leaf participated in the Metropolitan Cooking and Entertainment

1

Show in Washington, D.C.  Id., ¶ 11.  New Leaf asked Plaintiff to attend in order to help organize its booth and represent the company at the show from November 11-15.  Id.  On the evening of November 12, Plaintiff met Sipper and two other New Leaf co-workers for dinner at a restaurant.  Id., ¶¶ 21-22.  When the group arrived back at their hotel, Sipper, Plaintiff, and one of the co-workers had drinks at the hotel bar.  Id., ¶ 23.  Sipper and the co-worker discussed New Leaf's upcoming trade show in Las Vegas and answered Plaintiff's questions about the company.  Id.  At approximately 11:00 p.m., the co-worker left the hotel bar, while Sipper and Plaintiff remained and continued to discuss New Leaf and the upcoming trade shows in Las Vegas and Los Angeles.  Id., ¶¶ 24-25.

     Sipper asked Plaintiff whether she would like to attend the upcoming trade shows and then invited her up to his hotel room in order to book the travel on his laptop computer.  Id., ¶ 25.  He explained to Plaintiff that it would be difficult to do this the next day because they would be too busy with the show.  Id.  Plaintiff accepted his invitation, and they subsequently went up to Sipper's hotel room.  Id., ¶¶ 25, 27.  Plaintiff sat on one of the two double beds in the room while Sipper booked her travel.  Id.  An email confirmation sent to Plaintiff's email account confirmed that on November 12, 2010, Sipper booked Plaintiff's airline tickets from New York to Los Angeles and from New York to Las Vegas.  Id., ¶ 29.  While Sipper was reserving her tickets, Plaintiff explained that she needed to arrange a wake-up call for the following morning.  Id., ¶ 28.  Sipper responded that Plaintiff should not worry if she fell asleep on one of the beds because he would sleep in the other one.  Id.  He also assured Plaintiff that he would wake her up in time for the show the next morning.  Id.  Plaintiff ended up falling asleep while Sipper was still booking her travel.  Id.  She woke up later to find Sipper raping her.  Id., ¶ 30.  She tried to push

him off, then immediately fled back to her hotel room, where she called her boyfriend and then 911 to report the rape.  Id., ¶¶ 31-32, 35.

Plaintiff filed this suit on May 10, 2011.  She asserted counts of battery, intentional infliction of emotional distress, and "reckless and willful disregard" against both Sipper and New Leaf.  On June 29, New Leaf filed a Motion to Dismiss all of Plaintiff's claims.

## II.     Legal Standard

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor.  Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993).  The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 555.

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the complaint, see FED. R. CIV. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. FED. R. CIV. P. 10(c).

**III.   Analysis**

In moving to dismiss, New Leaf argues that it cannot be liable for Sipper's sexual assault. A company may be vicariously liable for the acts of its employees under the doctrine of *respondeat superior*. Penn Central Transportation Co. v. Reddick, 398 A.2d 27, 29 (D.C. 1979). This doctrine, however, does not automatically attribute any acts of an employee to his employer. Instead, as discussed below, either (1) the employee's acts must have taken place within the scope of his employment or (2) arguably, he must have used his apparent authority or have been aided by his agency relationship in accomplishing them. New Leaf here contends that neither circumstance is present.

   A.   Scope of Employment

Generally, in order for an employer to be held liable under the doctrine of *respondeat superior*, the employee's transgressing conduct must be within his scope of employment. In other words, "'the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends.'" Schecter v. Merchants Home Delivery, Inc., 892 A.2d 415, 427 (D.C. 2006) (quoting Axman v. Washington Gaslight Co., 38 App. D.C. 150, 158 (1912) (emphasis supplied by Schecter deleted)). When defining scope of employment, the District of Columbia follows the RESTATEMENT (SECOND) OF AGENCY (1958). See Council on American Islamic Relations v.

4

Ballenger, 444 F.3d 659, 663 (D.C. Cir. 2006) (citing Moseley v. Second New St. Paul Baptist Church, 534 A.2d 346, 348 n.4 (D.C. 1987)).  The RESTATEMENT explains:

> (1) Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

§ 228, cited in Council on American Islamic Relations, 444 F.3d at 663.  When evaluating scope of employment, "the test . . . is an objective one, based on all the facts and circumstances." Weinberg v. Johnson, 518 A.2d 985, 991 (D.C. 1986).  Scope of employment is ordinarily a question for the jury, but it "becomes a question of law for the court . . . if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment."  Council on American Islamic Relations, 444 F.3d at 663 (quoting Boykin v. District of Columbia, 484 A.2d 560, 562 (D.C. 1984)).

A number of other jurisdictions generally hold that sexual assaults fall outside the scope of employment.  See, e.g., Doe v. Purity Supreme, Inc., 664 N.E. 2d 815, 820 (Mass. 1996) (rape of employee by assistant store manager when they were working together in manager's office did not come within scope of employment because "rape and sexual assault of an employee do not serve the interests of the employer"); Dodge v. United States, 162 F. Supp. 2d 873, 884-85 (S.D. Ohio 2001) ("With regard to sexual assaults, Ohio courts have consistently held that such conduct is outside the scope of employment.") (collecting cases); Krause v. Turnberry Country

Club, 571 F. Supp. 2d 851, 864 (N.D. Ill. 2008) ("Illinois courts have consistently held that acts of sexual assault and misconduct are outside the scope of employment as a matter of law.") (collecting cases); Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076, 1078 (Fla. Dist. App. 1985) ("Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer.").

      The District of Columbia, however, does not subscribe to the blanket proposition that sexual assaults never come within the scope of employment; instead, courts here look at the factors involved in each case. The seminal decision that discusses D.C. law in this area is Boykin, 484 A.2d 560. In that case, the coordinator of a deaf/blind program at a D.C. public school sexually assaulted a deaf, blind, and mute student during the school day. Id. at 561. Among his duties was assisting blind students by guiding them by the arm or hand around the school to prevent them from walking into obstacles. Id. at 562. The D.C. Court of Appeals, in affirming a grant of summary judgment to the District, held that this sexual assault was not, as a matter of law, within the scope of the instructor's employment. The assault was "not a direct outgrowth of [the instructor's] instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives." Id. Furthermore, "[the instructor's] assault was in no degree committed to serve the school's interest, but rather appears to have been done solely for the accomplishment of [his] independent, malicious, mischievous and selfish purposes." Id. Although the instructor's duties involved physically touching students, the court found that fact to be "too attenuated" to conclude that the sexual assault could be brought within the purview of the instructor's scope of employment. Id.; see also Grimes v. B. F. Saul Co., 60 App. D.C. 47 (1931) (holding owner of apartment building not liable as matter of law for attempted rape on

tenant by employee hired to inspect building for repairs because act not done in furtherance of employer's business, but rather as an independent trespass of agent).

If the instructor's actions in Boykin could not render his employer vicariously liable, it is hard to see how Plaintiff could prevail on that issue here.  Unlike the instructor, Sipper had no duty that conceivably involved touching Plaintiff in any way.  His rape, furthermore, did nothing to further New Leaf's interests, but only served to satisfy his own selfish purpose.  Although Plaintiff has alleged that Sipper committed the rape "in furtherance of his employer's business interests, and with a desire, at least in part, to serve his employer's business interests," Compl., ¶¶ 59, 74, 90, she never alleges how this could be.  Such a conclusory allegation is "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1940.  Though the pleading rules are liberal and "legal conclusions can provide the complaint's framework," these "must be supported by factual allegations," id., which Plaintiff has failed to provide.

In such an instance, the Court should find, as a matter of law, that the rape took place outside his scope of employment.  See Schecter, 892 A.2d at 428 ("when all reasonable triers of fact must conclude that the servant's act was independent of the master's business, and solely for the servant's personal benefit, then the issue becomes a question of law") (internal quotation marks, citation, and emphasis omitted); id. ("'Conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master.'") (quoting RESTATEMENT § 235 cmt. a); Weinberg, 518 A.2d at 988 ("The employer, therefore, is not to be held liable for willful acts, intended by the agent only to further his own interest, not done for the [employer] at all.") (citation and internal quotation marks omitted).

Plaintiff cites other D.C. cases to argue that Boykin should not govern the outcome here.  They are easily distinguishable.  The first, Lyon v. Carey, 533 F.2d 649 (D.C. Cir. 1976), which

preceded Boykin by eight years, concerns a rape that grew out of a business-related dispute. There, a deliveryman raped and attacked with a knife a woman to whom he was delivering a mattress. The court held that the question of whether the employee's rape was within the scope of his employment should go to a jury because the rape was a direct outgrowth of a dispute between the deliveryman and the victim over payment. Id. at 651-52. The court stated, "The dispute arose out of the very transaction which had brought [the deliveryman] to the premises, and, according to the plaintiff's evidence, out of the employer's instructions to get cash only before delivery." Id. at 652. Lyon also noted that "[i]f the instrumentalities of assault had not included rape, the case would provoke no particular curiosity nor interest because it comes within all the classic requirements for recovery against the master." Id. at 654. The question of rape or sexual assault falling within the bounds of *respondeat superior* thus gave the court pause. It nonetheless concluded that "if the assault, sexual or otherwise, was triggered off or motivated or occasioned by a dispute over the conduct then and there of the employer's business, then the employer should be liable." Id. at 655. The court also cautioned that this assault was "at the outer bounds of *respondeat superior*." Id. at 651.

      The D.C. Court of Appeals has reiterated that crimes arising from business-related disputes are different. In Schecter, 892 A.2d 415 (D.C. 2006), the court affirmed a directed verdict for the employer of two deliverymen, finding it could not be vicariously liable for their theft from a woman to whom they had delivered a washing machine. As the woman did not discover the theft until after they had departed her home, no on-scene dispute occurred. The court noted that "each case in which the plaintiff prevailed originated in a job-related quarrel between the employee and the plaintiff, and the employer was held liable . . . [; i]n the present case, there was no confrontation of any kind between [the plaintiff] and the thieves." Id. at 430-

31. Here, Sipper and Plaintiff never had a business-related dispute – or a dispute of any kind; instead, just as in Boykin, "[t]he sexual attack . . . was unprovoked." 484 A.2d at 562. As a result, Lyon and Schecter do not counsel a denial of New Leaf's Motion.

Another case Plaintiff cites is Brown v. Argenbright Sec., Inc., 782 A.2d 752 (D.C. 2001), in which a twelve-year-old girl was stopped and sexually touched by a security guard who suspected her of shoplifting at a supermarket. The D.C.C.A., in reversing a grant of summary judgment for the security guard's employer, rejected the trial court's holding that sexual assaults, as a matter of law, fall entirely outside the scope of an individual's employment. Id. at 758. The court noted, "While it is probable that the vast majority of sexual assaults arise from purely personal motives, it is nevertheless possible that an employee's conduct may amount to a sexual assault and still be actuated, at least in part, by a desire to serve [the employer's] interest." Id. (citation and internal quotation marks omitted). The court concluded that this was a jury question because it was within the security guard's job duties to conduct physical searches of suspected shoplifters; in addition, the search in question began "only after [the guard] had reason to believe that his employer's interests had been affected." Id.

Once again, Plaintiff does not assert that part of Sipper's duties involved touching different parts of her body, like the security guard in Brown. Nor does Plaintiff allege any facts to support her conclusory statement that Sipper was motivated, even in part, by a desire to further New Leaf's interests by raping her. Finally, unlike Brown, the rape was not an outgrowth of actions on New Leaf's behalf.

The Court therefore finds, as a matter of law, that Sipper's rape occurred outside the scope of his employment with New Leaf. To hold otherwise would accomplish a significant expansion of agency doctrine, which this Court has no authority to undertake.

9

B.  Apparent Authority or Aided by Agency Relation

Plaintiff also proposes a separate basis for vicarious liability here – namely, that Sipper used his actual or apparent authority as Chief Operating Officer of New Leaf in order to accomplish the rape. Opp. at 1. Although Plaintiff, surprisingly, never relies directly on RESTATEMENT (SECOND) OF AGENCY § 219(2)(d), which provides a theory of vicarious liability, some of the cases she cites do. See Opp. at 7-8. This section states: "A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."

Unlike some other state supreme courts, the District of Columbia Court of Appeals has never addressed whether § 219(2)(d) applies to common-law claims in the District. Compare Zsigo v. Hurley Medical Center, 716 N.W. 2d 220, 227 (Mich. 2006) (declining to adopt § 219(2)(d)), and Groob v. KeyBank, 843 N.E. 2d 1170, 1179 (Ohio 2006) (same), with Doe v. Forrest, 853 A.2d 48, 57 (Vt. 2004) (expressly adopting § 219(2)(d)).

The United States Supreme Court, conversely, has employed this section in analyzing vicarious liability for federal Title VII sexual-harassment claims. See Faragher v. City of Boca Raton, 524 U.S. 775, 802 (1998) ("We therefore agree with Faragher that in implementing Title VII it makes sense to hold an employer vicariously liable for some tortious conduct of a supervisor made possible by abuse of his supervisory authority, and that the aided-by-agency-relation principle embodied in § 219(2)(d) of the Restatement provides an appropriate starting point for determining liability for the kind of harassment presented here." (footnote omitted));

Burlington Indus. v. Ellerth, 524 U.S. 742, 759 (1998) ("As other federal decisions have done in discussing vicarious liability for supervisor harassment, we begin with § 219(2)(d)." (citation omitted)).

The only D.C. Circuit case to discuss § 219(2)(d) is Gary v. Long, 59 F.3d 1391 (D.C. Cir. 1995), a Title VII decision that preceded Faragher and Ellerth's articulation of the standards that should govern hostile-work-environment claims. There are also two opinions from district courts here that look to this section in considering sexual-harassment claims under the D.C. Human Rights Act, as opposed to Title VII. See Rollerson v. Dart Group Corp., 1996 WL 365406, at *4 (D.D.C. June 25, 1996); Rauh v. Coyne, 744 F. Supp. 1186, 1190 (D.D.C. 1990). Neither they nor Gary discusses whether the District subscribes to the reasoning of § 219(2)(d) for common-law claims.

The parties have not squarely addressed this issue in their briefs either. Plaintiff never expressly urges the Court to adopt this section, and New Leaf does not argue against its applicability. Instead, the company takes the position that, even under § 219(2)(d), as articulated in Gary, no liability attaches. Given the preliminary posture of the case, the parties' positions, and the lack of direct briefing, the best course appears to be, for purposes of this Motion only and without deciding the issue, for the Court to assume the applicability of the section.

Even if § 219(2)(d) applies to these types of claims, its first clause is easily dispensed with. This clause essentially describes the doctrine of apparent authority: "the servant [must have] purported to act or to speak on behalf of the principal and there was reliance upon apparent authority." Because Plaintiff was asleep when Sipper began to assault her, she could not have relied on any apparent authority; in fact, she did not have the opportunity to even make that

determination. In addition, as Sipper could not have "purported to act or to speak on behalf of" New Leaf while assaulting her, this clause cannot apply.

The second clause of § 219(2)(d) presents a much more difficult challenge for New Leaf. This is because it requires only that the employee "was aided in accomplishing the tort by the existence of the agency relation." The D.C. Circuit has acknowledged the superficial expansiveness of the standard. See Gary, 59 F.3d at 1397 ("In a sense, a supervisor is always 'aided in accomplishing the tort by the existence of the agency' because his responsibilities provide proximity to, and regular contact with, the victim."). Yet, as Gary explains, "The commentary to the Restatement suggests that this [approach] embraces a narrower concept that holds the employer liable only if the tort was 'accomplished by an instrumentality, or through conduct associated with the agency status.'" Id. (citing Barnes v. Costle, 561 F.2d 983, 996 (D.C. Cir. 1997) (MacKinnon, J., concurring)). Examples include when a telegraph operator sends a false message or a store manager cheats a customer. Id. (citing Barnes, 561 F.2d at 996 (MacKinnon, J., concurring)).

In Gary, our Court of Appeals considered the question of vicarious liability for a hostile-work-environment claim. It determined that the plaintiff there could not "avail herself of the exception described in section 219(d)(2) . . . [because] she could not have believed (and nor does she claim) that [the supervisor] was acting within the color of his authority." 59 F.3d at 1397-98. The court continued: "It is a general principle of agency law that '[i]f a person has information which would lead a reasonable man to believe that the agent is violating the orders of the principal or that the principal would not wish the agent to act under the circumstances known to the agent, he cannot subject the principal to liability.'" Id. at 1398 (quoting RESTATEMENT § 166 cmt. a). In finding against the plaintiff, Gary ultimately "conclude[d] that an employer may not

be held liable for a supervisor's hostile work environment harassment if the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences." Id. at 1398 (citation omitted).

Because Gary was a sexual-harassment case that concerned numerous acts, as opposed to the one sexual assault here, much of this language about an employer's policies may well not be applicable.  In other words, whether New Leaf subsequently produces evidence about its harassment policies may prove of little relevance. Although New Leaf relies heavily on Gary's ultimate outcome, that case does not appear, at least at this juncture, to provide a clear path out of the thicket here.

New Leaf nonetheless argues, citing Gary's reliance on the comments to § 219(2)(d), that it cannot be liable because the rape was not accomplished by an "instrumentality" of Sipper's employment or "through conduct associated with the agency status."  In order for the Court to concur, more needs to be known.  To begin with, what role did Sipper play as COO, and did he have direct supervisory authority over Plaintiff?  Did Sipper rely on this authority as an instrumentality in summoning her to his hotel room for company business, or did she accompany him as a consenting adult independent of their work relationship?  Even if he summoned her for business, are there facts that support the theory that using his company status in this manner is sufficient for vicarious liability, or do the facts demonstrate that the rape itself was also accomplished using that status?  Was his original intent in bringing her to his room to have sex (forcible or otherwise), or did he make this decision after completing the travel booking and finding her asleep?  What precisely occurred in the hotel room, and did Plaintiff's falling asleep

somehow intervene to break her following of his direction and vitiate any use of his authority? These are important unresolved factual questions. As the facts have not been sufficiently developed, granting the Motion would be premature. See Rollerson, 1996 WL 365406, at *4 ("material facts remain in dispute regarding the application of § 219(2)(d), *i.e.,* whether [the supervisor] was aided in accomplishing his harassment by his supervisory status at [defendant employer's] store").

The difficulty of the issue is illustrated by one of the cases Plaintiff cites, Costos v. Coconut Island Corp., 137 F.3d 46 (1st Cir. 1998). The First Circuit there upheld a jury verdict finding an inn vicariously liable for common-law torts after its manager used his key to enter the plaintiff's room and rape her. Costos explained that the manager was entrusted by his employer with the keys, knew where to find the victim, had the responsibility of being at the inn late at night, and could thus find the victim's room and unlock her door. Id. at 50. If one equates the manager's possession and use of the key with Sipper's summoning Plaintiff to his hotel room for business, the instrumentality or aided-by-agency-relation test might dictate the same outcome. On the other hand, Costos, while discussing Gary as the possible basis for an alternate holding, ultimately found that Maine law on agency interprets RESTATEMENT § 219(d)(2) more broadly than the D.C. Circuit did. 137 F.3d at 48-50. More relevant, "Costos has been sharply criticized . . . [and] was later distinguished by the Supreme Judicial Court of Maine[, which] not only clarified that it had not expressly adopted [Restatement] § 219(d)(2), but also questioned the application of the exception by the Costos court." Zsigo, 716 N.W. 2d at 225-26. The aid provided by Costos is thus highly debatable.

The Court, therefore, will permit Plaintiff to proceed, for now, on an aided-by-agency-relation theory. After discovery, the parties may wish to return, armed with facts gleaned from

14

their work and with briefs that fully address the legal issues raised by § 219(2)(d). The Court, however, will not permit Plaintiff to proceed on her scope-of-employment or apparent-agency theory.

## IV.     Conclusion

The Court, accordingly, ORDERS that:

1. Defendant New Leaf's Motion is GRANTED IN PART and DENIED IN PART as set forth above; and

2. New Leaf shall file an Answer on or before Nov. 18, 2011.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   November 4, 2011