UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>        v.<br><br>WILLIAM A. SIPPER,<br><br>    Defendant. | Civil Action No. 11-875 (JEB) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jane Doe filed this action on May 10, 2011, seeking damages from an incident in which Defendant William Sipper allegedly raped her. The incident took place on November 12, 2010, while both parties were on a business trip in Washington, D.C. A warrant was subsequently issued for Defendant's arrest over a year later, and he surrendered to police on March 6, 2012. The criminal action in the Superior Court of the District of Columbia is currently pending grand jury indictment. In the instant Motion, Defendant moves to stay the civil case or, in the alternative, to obtain a protective order with respect to his deposition, pending further developments in the criminal case. The Court finds Defendant has sufficiently demonstrated that he would be prejudiced if the civil proceedings continue as currently scheduled. It will therefore issue a stay for ninety days, at which point it will determine how next to proceed.

**I.     Background**

According to Plaintiff's Complaint, at the time of the incident, Defendant was an executive at New Leaf Brands, Inc., a tea company, and Plaintiff was a part-time employee. Compl., ¶¶ 6, 10. On the evening of November 12, 2010, both were in Washington for business.

1

Id., ¶ 11. After discussing Plaintiff's future employment while at the hotel bar, the two went up to Defendant's room so he could book work-related travel for Plaintiff. Id., ¶¶ 25, 27-28. While Defendant was purchasing the tickets, Plaintiff fell asleep on one of the two beds in Defendant's room and awoke to find Defendant raping her. Id., ¶¶ 28, 30. Plaintiff fled Defendant's hotel room, called 911, and received a medical examination later that night at Washington Hospital Center. Id., ¶¶ 32, 35-36. When she returned to New York, she began medical and psychological treatment and was diagnosed with post-traumatic stress disorder. Id., ¶ 45.

Although Plaintiff reported the incident to the police right away, a warrant was not issued for Defendant's arrest until December 7, 2011. Def. Mem. at 2 n.1. The criminal case in Superior Court, United States v. Sipper, Criminal No. I-2754-11, began March 6, 2012, when Defendant surrendered to police. Id. at 1, 3. Defendant is charged with second-degree sexual assault, Opp. at 5, and the case is currently pending action of the grand jury. Defendant has not yet been indicted. Def. Mem. at 3. According to the defense, "[t]he expectation is that within a few months, there should be clarification as to whether and how the criminal case will be going forward." Id.

Defendant filed the instant Motion to Stay on May 18, and the briefing was completed on June 11.

**II.     Legal Standard**

The Court has the discretion to stay civil proceedings in the interest of justice and "in the light of the particular circumstances of the case." Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980). As the Supreme Court has noted, "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket …." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). To prevail on a

motion to stay, the movant needs to satisfy a high burden. Id. at 255. Another court in this District recently outlined the factors that are commonly weighed when a party moves to stay civil proceedings in light of parallel criminal proceedings. These are: 1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay. See U.S. ex rel. Westrick v. Second Chance, No. 04-280, 2007 WL 1020808, at *2 (D.D.C. Mar. 31, 2007); see also Horn v. Dist. of Columbia, 210 F.R.D. 13, 15 (D.D.C. 2002) (laying out similar factors). The factors serve only as a "rough guide" for a court as it exercises its discretion. Louis Vuitton Muleteer S.A. v. LY USA, Inc., 676 F.3d 83, 99 (2d Cir. 2012); see also Favaloro v. S/S Golden Gate, 687 F. Supp. 475, 482 (N.D. Cal. 1987) (court's decision based on "facts of each case"). The Court may give each factor as much weight as it determines to be necessary. Gabriel L. Gonzalez et. al., Parallel Civil and Criminal Proceedings, 30 Am. Crim. L. Rev. 1179, 1193 (1993).

**III.   Analysis**

In making its determination, the Court will look at each of the four aforementioned factors in turn.

A. Relationship Between Two Actions

The civil and criminal actions here indisputably stem from identical events. Plaintiff has sued Defendant for his actions in connection with the alleged rape, and the criminal case charges him with sexual abuse. See Dresser, 628 F.2d at 1375-76 (strongest case for stay is where both actions involve same matter). If both cases proceeded at the same time, this could implicate Defendant's Fifth Amendment rights. Defendant would be forced to choose between waiving his Fifth Amendment right to defend himself in the civil suit or "asserting the privilege and probably

losing the civil case." Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 528 (D.N.J. 1998). A close relationship between the two actions, furthermore, is often viewed as the most significant factor in the balancing test. See id. at 527.

Plaintiff argues that there is no parallel criminal action because Defendant has not been indicted. Opp. at 6. It is true that the lack of an indictment makes the case for a stay "far weaker," Dresser, 628 F.2d at 1376, and "inevitably much reduced." A-1 Hotels, 175 F. Supp. 2d at 577; see also Fed. Savings & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 903 (9th Cir. 1989) (case for pre-indictment stay is far weaker); Walsh, 7 F. Supp. 2d at 527 (case for pre-indictment stay generally denied); Barry Farm Resident Council, Inc. v. U.S. Dept. of Navy, No. 96-01450, 1997 WL 118412, at *3 (D.D.C. Feb. 18, 1997) (prior to criminal indictment, any harm alleged by a civil defendant is "entirely speculative").

Yet a criminal indictment is not necessary in order to grant a stay of parallel civil proceedings. See United States v. Kordel, 397 U.S. 1, 3 (1970) (court considered motion to stay prior to institution of criminal action); Dresser, 628 F. 2d at 1371-74 (court considered motion to stay prior to outcome of grand jury investigation). A stay in a civil proceeding prior to an indictment remains within a "court's inherent powers." S.E.C. v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003). The final determination remains within the discretion of the trial court. See Dresser, 628 F.2d at 1375; Second Chance, 2007 WL 1020808, at *2.

An important consideration here is that the case is not merely in an investigative phase, following which indictment may conceivably occur. On the contrary, Defendant has been arrested on a warrant issued upon probable cause. This substantially improves Defendant's argument for a stay. See Walsh, 7 F. Supp. 2d at 527 (pre-indictment stay appropriate where

4

Government had executed search warrants and issued subpoenas). Defendant's alleged harm is without a doubt more than "entirely speculative." This factor thus tips in favor of a stay.

    B. <u>Burden on the Court</u>

Defendant also argues that granting the Motion has the "potential" to facilitate the civil case, whereby the burden on the Court would be eased. Def. Mem. at 9; <u>see also</u> <u>Estate of Gaither ex rel. Gaither v. Dist. of Columbia</u>, 2005 WL 3272130, at *4 (D.D.C. Dec. 2, 2005) (stay in civil case until resolution of criminal case may later "streamline discovery" in the civil action). Indeed, the Court has an interest in avoiding unnecessary litigation that would burden its docket and "hamper judicial economy." <u>Id.</u> at *6 (litigation in civil case might prove duplicative prior to conclusion of parallel criminal case). Plaintiff argues, in contrast, that denying the Motion would assist judicial economy because "there is no certainty that any criminal investigation will ever result in an indictment." Opp. at 13.

Although this factor does not carry strong weight either way, the possibility in the next few months that Defendant may enter into a plea deal in the criminal case and a concomitant settlement of this case is worth something.

    C. <u>Balance of Interests</u>

There are many interests a plaintiff could assert in opposing a motion to stay. <u>See, e.g.</u>, <u>D'Ippolito v. Am. Oil Co.</u>, 272 F. Supp. 310, 312 (S.D.N.Y. 1967) (denial necessary to preserve testimony); <u>Fed. Sav. & Loan Ins. Corp. v. Molinaro</u>, 889 F.2d 899, 903 (9th Cir. 1989) (denial necessary to preserve potential assets). Plaintiff, however, only argues that a stay of the civil proceedings here would unduly burden her because it would "further delay her recovery from the emotional and psychological harms of the rape." Opp. at 12. In support of this claim, Plaintiff argues that Defendant's own expert has stated that her "symptoms will improve once the civil

and criminal matters are resolved." Id. Although Plaintiff's desire for an end to litigation is certainly understandable, it is not much more compelling here than in many civil cases in which plaintiffs seek closure. In addition, any desire for a financial recovery is blunted because she has already settled with the corporate Defendant.

Defendant, on the other hand, has presented two interests he claims would be promoted by a stay: 1) expending personal and legal resources on two cases; and 2) choosing to waive or assert his Fifth Amendment privilege. Def. Mem. at 8-9. While Defendant does not explain how the Court should value his desire not to split resources, his Fifth Amendment dilemma is significant, as discussed in Section III.A., *supra*. See Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1088-89 (5th Cir. 1979) (not fair to force party to choose between Fifth Amendment privilege and the civil action). If Defendant were to invoke his Fifth Amendment right and decline, *e.g.*, to answer deposition questions, his invocation could be used against him to establish civil liability. See Louis Vuitton, 676 F.3d at 98.

Plaintiff first responds with the broad statement that "[s]ince no indictment has been issued, there are no Fifth Amendment privileges to assert." Opp. at 8. This is plainly wrong. Defendant's constitutional right against self-incrimination may be invoked in any proceeding, and it was clearly triggered by his arrest. See, e.g., Miranda v. Arizona, 384 U.S. 436 (1966). Plaintiff next argues that Defendant waived his Fifth Amendment rights by answering interrogatories and providing other information. Opp. at 9. She relies on Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72 (1st Cir. 2004), in which the defendant had given "lengthy deposition testimony" and "composed and signed a detailed affidavit" prior to requesting a stay. See id. at 79. Although Defendant here has answered interrogatories, he has not testified in a deposition or been examined under oath, and a waiver is "not lightly to be

6

inferred." Smith v. United States, 337 U.S. 137, 150 (1949) (footnote omitted). In addition, Defendant argues that at the point he answered the interrogatories, he was "unaware that an arrest warrant had issued for him," and his answers were not adverse to his case. Reply at 3. The Court thus cannot find a clear waiver here.

Some courts have also taken into account the public interest in deciding whether to grant a motion to stay. See, e.g., Molinaro, 889 F.2d at 903. In the present case, neither party has presented a strong argument that the public interest would be significantly influenced by the Court's decision. Plaintiff's claim, for example, that "there is a public interest in allowing crime victims to pursue civil litigation while the related criminal litigation has not crystallized or lags behind" is too nebulous. Opp. at 14. The balancing of interests thus favors Defendant.

### D. Duration of Stay

Defendant here has requested a stay or, alternatively, a protective order "pending further developments in the criminal case clarifying how that case will proceed." Mot. at 1. He estimates such a clarification will "occur[] within the next few months." Def. Mem. at 4. Defendant acknowledges that the stay would likely need to be revisited if the criminal case proceeded to indictment and trial, and he thus asks the court to revisit the proposed stay after ninety days. Id. A stay with a limited duration, as presented here, is more likely to be granted than an indefinite one. See Landis, 299 U.S. at 254-55 (abuse of court's discretion to grant indefinite stay without pressing need).

The criminal action is currently pending grand jury review, and it is unclear how long this will take. Although the Superior Court has the discretion to enlarge the timeframe, the grand jury must take action on the criminal case within nine months after Defendant's arrest or the case will be deemed abandoned. See D.C. Code § 23-102. As Defendant was arrested on March 6,

2012, the grand jury must take action by December 6.  Given this framework, a temporary stay of ninety days until late September seems reasonable.

As the four factors thus militate in favor of a ninety-day stay, the Court will grant Defendant's Motion.

## IV.    Conclusion

As set forth above, the Court ORDERS that:

1. Defendant's Motion is GRANTED; and
2. The case is STAYED until Sept. 24, 2012.

>                     /s/ *James E. Boasberg*
>                     JAMES E. BOASBERG
>                     United States District Judge

Date:  June 25, 2012